United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JT FOXX ORGANIZATION,<br><br>Plaintiff,<br><br>v.<br><br>VERONIQUE PALMER,<br><br>Defendant. | Case No. 17-cv-02661-DMR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR EARLY DISCOVERY WITHOUT PREJUDICE**<br><br>Dkt. No. 7 |

Plaintiff JT Foxx Organization ("Plaintiff") moves the court pursuant to Federal Rule of Civil Procedure 26(d) for leave to take discovery prior to the Rule 26 conference so that it may ascertain the identity of two as-of-yet unnamed defendants ("Doe Defendants 1 and 2") in this action. Specifically, Plaintiff requests permission to issue an early subpoena to Google, Inc. ("Google"), which is the platform upon which Doe Defendant 1 owns and operates a blog called "mr.sharepoint.blogspot.com" that published allegedly defamatory statements about Plaintiff's business. Doe Defendant 2 helped write the allegedly defamatory statements. Plaintiff seeks subscriber information sufficient to identify Doe Defendants 1 and 2 for purposes of service of the summons and the complaint. This matter is appropriate for determination without oral argument. *See* Civ. L.R. 7-1(b). For the reasons contained herein, the court **DENIES** Plaintiff's motion **WITHOUT PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Florida company that provides training seminars and coaching sessions to entrepreneurs who want to start their own business. (Compl. ¶ 11) [Docket No. 1]. Plaintiff operates throughout the United States as well as globally. (*Id.*). On May 8, 2017, Plaintiff filed the instant action against Defendants Veronique Palmer ("Palmer") and Doe Defendants 1 and 2, alleging claims for libel and unfair or deceptive business practices under California Business &

Professions Code § 17200. Plaintiff seeks to stop Defendants from publishing defamatory statements about Plaintiff's business.

According to Plaintiff, Doe Defendant 1 owns and operates a blog called "mr.sharepoint.blogspot.com" which is run on the Google platform. (Compl. ¶ 14). Google is based in Northern California. (Compl. ¶¶ 10, 14). Palmer, who is a South African citizen, wrote a review of Plaintiff's business services entitled "Why the JT Foxx Free Seminars are a Scam and South Africans Need to Catch a Wake Up." The review was posted on Doe Defendant 1's blog on November 26, 2015. (Blog Post (Ex. A to Compl.)). According to Plaintiff, Palmer's written review contained false and libelous statements about Plaintiff's business, including that Plaintiff is a scam and is ripping off its clients, and that individuals associated with Plaintiff are criminals. (Compl. ¶¶ 23-26; Blog (Ex. A to Compl.). Plaintiff alleges that Doe Defendant 2 helped write the defamatory review. (Compl. ¶ 4). Plaintiff asserts that Palmer and Doe Defendants 1 and 2 thereafter manipulated the Google search engine via the Google platform so that Palmer's review was displayed near the top of the search list for Google searches for "JT Foxx." (Compl. ¶ 15). As a result, Palmer's review was "seen and read by hundreds if not thousands of customers and prospective clients," some of whom reside in the San Francisco Bay Area. (Compl. ¶ 27). Plaintiff contends that it suffered and continues to suffer extraordinary damages including loss of potential customers, loss of goodwill, and loss of existing customers as a result of the defamatory blog. (Compl. ¶¶ 18, 29).

Plaintiff, through its attorneys, asked Google to remove Palmer's review and to provide subscriber information for the review and the blog site, but Google refused to do either without a court order. (Compl. ¶ 17); (Vu Decl. ¶ 5 [Docket No. 7-1]); (Ex. D to Vu Decl.). Palmer's review is still on the "mr.sharepoint.blogspot.com" blog and is still one of the top search results when searching for "JT Foxx" on the Google search engine. (Vu Decl. ¶ 7).

On May 9, 2017, Plaintiff's counsel sent the summons, the complaint, and other necessary service documents to the South African consulate to serve on Palmer pursuant to the procedures prescribed by the South African Department of Justice and Constitutional Development. (Vu Decl. ¶ 2); (Ex. A through C to Vu Decl.). Plaintiff's counsel has not heard back from the South

African consulate regarding the status of Plaintiff's service on Palmer. (Vu Decl. ¶ 3).

Plaintiff now moves the court for leave to take discovery prior to the parties' Rule 26(f) conference. Specifically, Plaintiff seeks leave to serve a subpoena on Google requesting the identity of the owner(s) of the "mr.sharepoint.blogspot.com" blog including the owner(s') name(s); company name(s), e-mail address(es), physical address(es), phone number(s), and contact person(s). (Proposed Subpoena (Ex. E to Vu Decl.)). Plaintiff asserts that the Rule 26(f) conference will be delayed indefinitely if the court does not grant its motion due to its difficulties serving Palmer in South Africa.

## II. LEGAL STANDARD

Generally, a party may not initiate discovery before the parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f). However, a court may authorize earlier discovery "for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d)(3). Courts have permitted "limited discovery . . . after [the] filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *see also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (when the true identity of the defendants is not known before complaint is filed, a plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds").

The plaintiff must demonstrate good cause for early discovery. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In evaluating whether a plaintiff establishes good cause to learn the identity of the defendants through early discovery, courts examine whether the plaintiff (1) identifies the unknown party with sufficient specificity that the court can determine that the party is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the party, (3) demonstrates that the action can withstand a motion to dismiss, and (4) demonstrates a reasonable likelihood that the discovery will lead to identifying information that will permit service of process. *Columbia Ins. Co.*, 185 F.R.D. at 578-580.

3

**III. DISCUSSION**

At the outset, although Plaintiff says that it seeks early discovery to reveal the identities of Doe Defendants 1 and 2, in reality, Plaintiff's proposed subpoena is only aimed at obtaining information about Doe Defendant 1. The subpoena seeks identifying information about the owner(s) of the blog entitled "mr.sharepoint.blogspot.com," which is Doe Defendant 1. The subpoena is not focused on Doe Defendant 2, who is alleged to be "a company or individual that helped write the defamatory blog material" for the blog in question. The court therefore limits its analysis to Doe Defendant 1.

Having evaluated Plaintiff's motion for early discovery "in light of all the surrounding circumstances," *Semitool*, 208 F.R.D. at 275 (citation and internal quotation marks omitted), the court finds that Plaintiff has failed to satisfy the first factor in the *Columbia* test. Specifically, on the current record, Plaintiff has not demonstrated that the court likely has personal jurisdiction over Doe Defendant 1. *See Columbia Ins. Co.*, 185 F.R.D. at 578 (explaining that the first factor "is necessary to ensure that federal requirements of jurisdiction and justiciability can be satisfied"). For the same reason, Plaintiff has failed to satisfy the third prong of the *Columbia* test to the extent that it has not demonstrated that the action can withstand a motion to dismiss due to lack of personal jurisdiction over Doe Defendant 1.

**A. Personal Jurisdiction**

Personal jurisdiction is proper if it is "consistent with [California's] long-arm statute and if it comports with due process of law." *Boschetto v. Hansing*, 539 F.3d 1011, 1020–21 (9th Cir. 2008). Under California's long-arm statute, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10; *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts may be established through a showing of either general or specific

4

jurisdiction. *Schwarzenegger*, 374 F.3d at 801.

Here, Plaintiff contends that the court has specific jurisdiction over Doe Defendant 1. (Motion for Early Discovery ("Mot.") at 5) [Docket No. 7].

Specific jurisdiction is justified by the "nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). In determining whether specific jurisdiction exists, courts apply a three-part test:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). The plaintiff bears the burden of making a prima facie showing by establishing the first two elements of the test, at which point the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotation marks omitted). A plaintiff need only make a "prima facie" showing in order to avoid a motion to dismiss. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

To establish the first prong of the specific jurisdiction test, Plaintiff must show that Doe Defendant 1 "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in suits, such as this libel action, that sound in tort. *Id.*

To evaluate purposeful direction, the Ninth Circuit uses the three-part "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Under the *Calder* effects test, a defendant purposefully directs activity at a forum state when he or she "(1) commit[s] an intentional act, (2)

expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (citation omitted).

### 1. Intentional Act

The first prong of the *Calder* effects test requires the commission of an intentional act. The Ninth Circuit "construe[s] 'intent' . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 806). Plaintiff satisfies the first prong. The complaint alleges that Doe Defendant 1 owns and operates a blog that published a defamatory review of Plaintiff's business. (Compl. ¶¶ 14, 23-26; Blog (Ex. A to Compl.)); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (concluding that operating a passive website was an intentional act); *iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, No. C-11-0592 CW, 2011 WL 6291793, at *7 (N.D. Cal. Oct. 25, 2011), report and recommendation adopted sub nom. *Iyogi Holding PVT Ltd. v. Secure Remote Support Inc.*, No. C 11-0592 CW, 2011 WL 6260364 (N.D. Cal. Dec. 15, 2011) (finding the non-resident defendants "committed an intentional act by posting shill reviews about Plaintiff on consumer review websites and by operating their own websites that posted false, misleading and defamatory statements about Plaintiff's business").

### 2. Express Aiming

The second prong examines whether a defendant expressly aimed the act at the forum state. Under Ninth Circuit law, "maintenance of a passive website alone cannot satisfy the express aiming prong" of the *Calder* effects test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (quoting *Brayton Purcell LLP*, 606 F.3d at 1129); *see also DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012) (explaining that it is clear that "[a] defendant has not purposefully availed himself of the privilege of conducting activities in a forum state merely because he operates a website which can be accessed there") (citation and internal quotation marks omitted).

However, "'operating even a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient.'" *Mavrix Photo, Inc.*, 647 F.3d at 1229

(quoting *Rio Props., Inc.*, 284 F.3d at 1020). The Ninth Circuit has considered several factors in determining whether a nonresident defendant has done "something more," "including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo, Inc.*, 647 F.3d at 1229 (internal citation and internal quotation marks omitted).

According to Plaintiff, Doe Defendant 1 expressly aimed its conduct at California because it operated the blog "on the Google platform, based out of Northern California, and intentionally published defamatory statements about Plaintiff and manipulated Google's search engine, operated in Northern California, to artificially display such defamatory statements in returning search results for 'JT Foxx' for all of JT Foxx's clients and potential clients, including those located in the Northern District of California, to see." Mot. at 5, citing Compl. ¶¶ 14-15.

These allegations are insufficient to establish that Doe Defendant 1 expressly aimed its conduct at California. As is clear under Ninth Circuit law, Doe Defendant 1's operation and ownership of a blog website does not satisfy the "express aiming prong" of the *Calder* effects test. *See Brayton Purcell LLP*, 606 F.3d at 1129; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997); *see also Pooka Pooka LLC v. Safari Beach Club*, No. C-12-03817 DMR, 2013 WL 12203872, at *4 (N.D. Cal. Apr. 17, 2013) (finding that the defendant's "mere operation of a website potentially accessible by Californians [did] not establish this court's personal jurisdiction over Defendants" where there was "nothing to suggest that Defendants were targeting Californians").

Plaintiff has not shown that there is "something more" than the existence of Doe Defendant 1's blog to establish that Doe Defendant 1 expressly aimed activity at California. The complaint and motion contain virtually no facts about Doe Defendant 1 other than that it posted the allegedly defamatory statements written by Veronique Palmer and Doe Defendant 2 on the blog website. The record is silent as to the nature of Doe Defendant 1's blog, its intended readership, or the commercial aspects of the blog, if any. *See, e.g., Mavrix*, 647 F. 3d at 1229, 1231 ("most salient" fact supporting specific jurisdiction was that defendant used plaintiff's

7

copyrighted photos to exploit California market for its own commercial gain; "same would not necessarily be true" for "unpaid blogger who posted an allegedly actionable comment or photo to a website accessible in all fifty states, but who could not be as certain . . . that his actions would be so widely observed and who did not seek commercial gain from users outside his locality.")

Nor is there any indication that Doe Defendant 1 targeted Plaintiff's California-based activities. Plaintiff is a resident of Florida. Although the complaint generally alleges that Plaintiff "operates throughout the United States as well as globally," (Compl. ¶ 11), Plaintiff makes no representation about how much business it conducts in California. The blog posting itself was written by Defendant Palmer, a South African citizen, and the posting discusses a seminar that Plaintiff presented in South Africa. At most, Plaintiff states that "clients and potential clients" in California could view the offending blog post. Mot. at 5, citing Compl. ¶¶ 14-15. However, "'the express aiming requirement is not satisfied where it is merely foreseeable that there will be an impact on individuals in the forum.' . . . Instead, plaintiffs must show that there was 'individual targeting' of forum residents." *DFSB Kollective Co.*, 897 F. Supp. 2d at 875 (quoting *Fiore v. Walden*, 688 F.3d 558, 577 (9th Cir. 2011)).

Plaintiff rests much of its argument on the fact that Doe Defendant 1's blog is hosted on the Google platform and the alleged manipulation of search terms took place on the Google platform. The fact that Google is headquartered in California is inadequate to provide the "something more" beyond operation of a website that is necessary to trigger specific jurisdiction. As noted by the court in *DFSB Kollective Co.,* such an outcome ignores the ubiquity of the internet:

> While the location of [internet] companies is relevant for lawsuits directly involving the companies, the Court is unpersuaded that the headquarters of these Internet companies establishes that Defendant expressly aimed his infringing activities at the California market. To adopt Plaintiff's reasoning would render the "expressly aimed" prong of the *Calder* test essentially meaningless as it has become ubiquitous for businesses – large and small – to maintain Facebook and/or other similar accounts for marketing purposes and would subject millions of persons around the globe to personal jurisdiction in California.

*DFSB Kollective Co.*, 897 F. Supp. 2d at 883.

In sum, the court finds that on the current record, Plaintiff has not demonstrated that Doe

8

Defendant 1 purposefully directed its activities at California under the *Calder* effects test. Therefore, Plaintiff has not satisfied the first element of the specific jurisdiction test, and cannot demonstrate that personal jurisdiction likely exists over Doe Defendant 1. The court does not reach the remaining elements of the specific jurisdiction test, nor does it reach the remaining factors of the *Columbia* test.

## IV. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's motion for early discovery without prejudice. *See Berlin Media Art e.k. v. Does 1-654*, No. 11-03770 JSC, 2001 WL 36383080, at *3 (N.D. Cal. Oct. 18, 2011) (because the court's analysis suggested that it lacked personal jurisdiction over the Doe defendants, the court denied the plaintiff's motion for early discovery "for [that] reason alone"); *see also Celestial Inc. v. Swarm Hash*, No. CV-12-00132 DDP (SSx), 2012 WL 995273, at *3 (C.D. Cal. Mar. 23, 2012) (denying the plaintiff's motion for early discovery without prejudice because the plaintiff's complaint would not survive a motion to dismiss for lack of personal jurisdiction).

**IT IS SO ORDERED.**

Dated: August 23, 2017



Donna M. Ryu
United States Magistrate Judge